UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMAR JOHNSON,

                         Plaintiff,

    v.

FATHER PAUL; RABBI HOROWITZ;
COUNTY OF WESTCHESTER,

                         Defendants.

No. 17-CV-3654 (KMK)

OPINION AND ORDER

Appearances:

Kamar Johnson
Valhalla, NY
*Pro Se Plaintiff*

David H. Chen, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Kamar Johnson ("Plaintiff") filed the instant Complaint ("Complaint"), pursuant to 42 U.S.C. § 1983, against the County of Westchester, Father Paul, and Rabbi Horowitz (collectively, "Defendants"). (Compl. (Dkt. No. 1).)[1] Plaintiff alleges that Defendants violated his rights under the First Amendment when they denied him Jewish meals and Jewish

---

[1] Plaintiff sued the Westchester County Department of Correction, but the Court substituted the County of Westchester as the proper Defendant. (Order of Service (Dkt. No. 8).)

services while he was detained at Westchester County Department of Correction ("WCDOC"). (*Id.* at 3.)[2]

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. To Dismiss (Dkt. No. 16); Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 17).) For the following reasons, Defendants' Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and are taken as true for the purpose of resolving the instant Motion. During the time of the alleged events, Plaintiff was an inmate at WCDOC. (*Id.* at 2.)

On April 10, 2017, at approximately 8:00 a.m., Plaintiff was "not receiving [his] Jewish meals even though [he]'d put in for it." (*Id.* at 2–3.) Plaintiff had "been in [WCDOC] several times before and [he] always got[] [his] Jewish meals with no problem, so [he is] trying to figure out what's the problem this time." (*Id.* at 3.) It was "past over and [he] [couldn't] partake in the past over cause they [were] not sending [his] meals." (*Id.*)[3] "Father Paul, Rabbi Horowitz, and WCDOC ha[ve] failed to call Jewish service, and it [was] past over month." (*Id.*) "Several other

---

[2] Plaintiff's Complaint is on a standard prisoner complaint form. For ease of reference, the Court cites to the ECF-generated page numbers in the top right corner of the document.

[3] The Court assumes Plaintiff is referring to the Jewish holiday of Passover when he says "past over." However, the Court takes judicial notice of the fact that the Passover holiday began at sundown on Monday, April 10, 2017 and ended at sundown on Tuesday, April 18, 2017. *See Yoselovsky v. Associated Press*, 917 F. Supp. 2d 262, 280 (S.D.N.Y. 2013) (citing Fed. R. Evid. 201(b)); *see also* Hebcal Jewish Calendar, www.hebcal.com (last visited April 9, 2018) (identifying April 10 as "Erev Pesach" and showing eighth night on April 18, 2017). Therefore, it is possible Plaintiff is referring to something else when he mentions the "past over month." (Compl. 3.)

2

Jewish inmates on Plaintiff's block were also complaining about the lack of Jewish services, "esp[ecially] for past over month." (*Id.*)

Plaintiff alleges that these denials of meals and services violated his First Amendment right to practice his religion. (*Id.*) He therefore requests that the Court enjoin WCDOC to call Jewish services and provide Jewish religious meals, as well as $2,500,000 in compensatory damages. (*Id.* at 5.)

B. Procedural Background

Plaintiff filed the Complaint on May 15, 2017, (Compl.), and was granted in forma pauperis status on July 26, 2017, (Dkt. No. 6). On August 3, 2017, the Court issued an Order substituting the County of Westchester as a Defendant in place of the Westchester County Department of Correction and directing service on Defendants. (Order of Service (Dkt. No. 8).) All Defendants were served. (*See* Dkt. Nos. 10, 12, 13.) On October 2, 2017, Defendants filed a pre-motion letter indicating the grounds on which they would move to dismiss the Complaint. (Letter from David H. Chen, Esq. to Court (Oct. 2, 2017) (Dkt. No. 14).) Plaintiff did not respond, and the Court set a briefing schedule. (Dkt. No. 15.)

Defendants filed the Motion To Dismiss on October 24, 2017. (Notice of Mot; Defs.' Mem.; Decl. of David H. Chen, Esq. in Supp. of Mot. to Dismiss (Dkt. No. 18).) Plaintiff did not oppose the Motion. On January 9, 2018, Defendants asked the Court to consider the Motion unopposed and to permit Defendants to file a late reply should Plaintiff belatedly file a response, (Letter from David H. Chen, Esq. to Court (Jan. 9, 2018) (Dkt. No. 20)), which the Court granted, (Dkt. No. 21).

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but

it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted). Thus, although the "failure to oppose Defendants' [M]otion [T]o [D]ismiss does not, by itself, require dismissal of [Plaintiff's] claims," *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013), "the sufficiency of [the] [C]omplaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law," *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B.  Analysis

   1. *Monell* Liability

The County of Westchester argues that the Complaint should be dismissed against it for failure to allege a policy, custom, or practice that caused the alleged constitutional violations. (Defs.' Mem 6–7.) "Congress did not intend municipalities to be held liable [under § 1983]

5

unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue.").

The Complaint is devoid of any factual allegations meeting these requirements. Indeed, aside from listing the County of Westchester, originally sued as WCDOC, in the caption and as a party, (Compl. 1), the County is mentioned only once in the Complaint, when Plaintiff alleges that "WCDOC has failed to call Jewish service," (*id.* at 3). However, Plaintiff does not allege that this denial of services was undertaken pursuant to a "formal policy" of the County of Westchester, that it was done by a policymaking official, that it was done as part of "a custom or usage" that a supervisory policymaker was aware of, or that it was a result of inadequate training or supervision of County employees. *Brandon*, 705 F. Supp. 2d. at 276–77. Plaintiff seems to allege that the failure "to call Jewish service" occurred on April 10, 2017, (Compl. 2–3), but "a single incident . . . especially if it involved only actors below the policy making level, does not suffice to show a municipal policy," *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted). Similarly, to the extent Plaintiff is attempting to hold the County of Westchester liable for Father Paul's and Rabbi Horowitz's alleged actions, a "single act" by a County employee is insufficient to establish § 1983 liability for the County. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)).

Construing the Complaint liberally, the County of Westchester was involved in the denial of Jewish meals. (*See* Compl. 3 (alleging that "they [were] not sending [Plaintiff's] meals").) However, again, Plaintiff does not allege that this was done pursuant to an official policy, custom, or practice of the County. Indeed, Plaintiff implies that the denial of proper Jewish

7

meals was an *exception* to WCDOC policy. (*See id.* ("I've been in this Jail several times before and I always [have] gotten my Jewish meals with no problem, so I'm trying to figure[] out what's the problem this time.").) This attempt to impose vicarious liability on the County for purported violations of its meal policy is "in direct violation of *Monell*." *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 632 (E.D.N.Y. 2011) (dismissing *Monell* claim where the "plaintiff's argument [wa]s not that [the] defendants acted pursuant to an official discriminatory policy. . . . Rather, [the] [p]laintiff's argument [wa]s . . . that [a defendant] failed to act in accordance with [the] policy"). In any event, as explained above, a "single" incident is insufficient to show a policy or custom. *See Triano*, 895 F. Supp. 2d at 532 (S.D.N.Y. 2012).

Therefore, because Plaintiff does not allege any facts plausibly supporting an inference that the County of Westchester had a policy, custom, or practice of denying inmates Jewish services or meals, let alone during the holiday of "past over," the Court grants the County's Motion To Dismiss on *Monell* grounds.

### 2. Personal Involvement

Defendants Rabbi Horowitz and Father Paul argue that the denial of meals claim should be dismissed against them because they were not personally involved in the alleged denials. (Defs.' Mem. 7–8.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

8

> to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Rabbi Horowitz's and Father Paul's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

The Complaint explicitly alleges that Father Paul and Rabbi Horowitz "failed to call Jewish service" during the month of past over. (Compl. 3.) It also alleges, in the immediately preceding sentence, that Plaintiff could not "partake in the past over cause they [were] not sending [his] meals." (*Id.*) Construing the Complaint liberally, it alleges that "they," meaning Father Paul and Rabbi Horowitz, personally deprived him of Jewish meals. (*Id.*) This satisfies the personal involvement requirement. *See Grullon*, 720 F.3d at 139 (listing as a category that "the defendant participated directly in the alleged constitutional violation"); *cf. Shepherd v. Fisher*, No. 08-CV-9297, 2011 WL 3278966, at *4 (S.D.N.Y. July 27, 2011) (dismissing denial of religious meals claim because the complaint did not allege that the defendant "was directly responsible for the provision of religious meals . . . or played any other role in the alleged deprivation that could support a finding of personal involvement under any prong of the *Colon* test"). Therefore, the Court declines to dismiss this claim for lack of personal involvement.

### 3. First Amendment Free Exercise Claim

Defendants argue that the Complaint fails to state a Free Exercise claim under the First Amendment. (Defs.' Mem. 4–6.) "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the "constitutional right to participate in . . . religious services," *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted). Accordingly, a prisoner's free exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–45 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.").[4]

---

[4] The Second Circuit has acknowledged that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014). The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question. *Id.* This Court has already chosen to follow the analysis in *Holland* and thus will proceed under the assumption that the substantial burden test is still valid. *See Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *4 n.5 (S.D.N.Y. Feb. 2, 2017).

"[A] substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (alterations and internal quotation marks omitted); *see also Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *5 (S.D.N.Y. Feb. 2, 2017) (same). The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593-94. Once the plaintiff satisfies this burden, the defendants then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," although "the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (alterations and internal quotation marks omitted).

Defendants argue that Plaintiff has not pled his religious beliefs were sincerely held and that in any event the deprivations at issue did not constitute a substantial burden. (Defs.' Mem. 4–6.) Construing the Complaint liberally, Plaintiff alleges two ways his free exercise of Judaism was burdened: (1) he was deprived of Jewish meals, preventing him from observing "the past over," and (2) he was denied at least one Jewish service during the month of "past over." (Compl. 3.) As alleged, neither of these states a claim for violation of the Free Exercise Clause.

Even assuming Plaintiff has sincerely held religious beliefs in receiving Jewish meals and attending services during "past over," he has failed to plausibly allege a substantial burden on those beliefs. Although the Complaint states that Plaintiff "can't partake in the past over cause they [are] not sending [his] meals" and Defendants "failed to call Jewish service," (Compl. 3), it does not further allege that "past over" observance "is considered central or important to [his] religious] practice," *Ford*, 352 F.3d at 593–94. For example, Plaintiff does not allege that

observing "past over" dietary restrictions or attending "past over" religious services is so important to his Jewish faith that missing even one meal or service could constitute a substantial burden. *Cf. Lombardo v. Freebern*, No. 16-CV-7146, 2018 WL 1627274, at *12 (S.D.N.Y. Mar. 30, 2018) (alleging that "Passover is the pinnacle of the reason Jews exist today, akin to the Super Bowl of religious services" (internal quotation marks omitted)); *Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *14 (S.D.N.Y. Feb. 14, 2018) (alleging "that both Ghadir Khum and Muharram/Ashura 'are an integral part of the Shia faith'"); *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *9 (S.D.N.Y. Sept. 7, 2017) (referring "repeatedly" to the events "as 'Holy Days,' and specifically alleg[ing] that the events are 'unique to Shi'ism'"); *see also Williams v. Does*, 639 F. App'x 55, 57 (2d Cir. 2016) (explaining that the plaintiff "characterized fasting for Ramadan as important to his practice of Islam and stated that eating before sunset was a 'grave spiritual sin' that canceled the 'validity' of fasting").

Moreover, even if "past over" is important to Plaintiff's faith, Plaintiff provides no details whatsoever about the missed meal(s) or service(s), such that the Court could reasonably infer they were in turn important to—let alone necessary for—the observance of "past over." (*See* Compl. 3.) For example, he does not allege that the "Jewish meals" he requested were chametz-free, and that he was instead forced to choose between starving or observing Passover.[5] (*Id.*) *See Odom v. Dixion*, No. 04-CV-889, 2008 WL 466255, at *12 (W.D.N.Y. Feb. 15, 2008) ("[The] [p]laintiff does not allege, and points to no evidence suggesting, that he was obligated to eat the specific 'break-the-fast' meal for Yom Kippur. As such, it is not established . . . that the

---

[5] "The Torah directs Jews not to eat 'chametz' during Passover. *See* Exodus 12:15. 'Chametz' is 'leven'—food made of grain and water that has been allowed to ferment and 'rise.' *See* http://www.chabad.org/librar y/howto/wizard_cdo/aid/1755/jewish/1–What–isChametz.htm." *Riehl v. Martin*, No. 13-CV-439, 2014 WL 1289601, at *3 n.2 (N.D.N.Y. Mar. 31, 2014) (third citation omitted).

12

denial of the meal 'substantially burdened' [the] [p]laintiff's sincerely held religious belief in any major tenet of the Jewish faith."); *cf. Jones*, 2018 WL 910594, at *14 (finding that the plaintiff plausibly alleged a substantial burden by alleging that he had to "'perform[] these Islamic rituals on his own,' without access to halal foods, and thus 'was forced to abandon performing them' and to 'break his fast' by eating with the general population" (alteration omitted)); *Riehl v. Martin*, No. 13-CV-439, 2014 WL 1289601, at *10 (N.D.N.Y. Mar. 31, 2014) (denying summary judgment on free exercise claim where the plaintiff, a Jewish inmate, received food with chametz during Passover); *see also Williams*, 639 F. App'x at 57 (finding that the plaintiff "alleged a plausible free exercise claim" because the "complaint alleged that the premature sunset meals forced him to either forgo his meal or break his fast"). Indeed, he does not even allege that the "Jewish meals" he requested were meals prepared specifically for inmates observing "past over," rather than simply general kosher meals prepared for Jewish inmates. *See Goldschmidt v. N.Y. State Affordable Hous. Corp.*, 380 F. Supp. 2d 303, 317 (S.D.N.Y. 2005) (distinguishing between people who "identify as Jewish" and those who "observe Shabbat" and "Jewish holidays"). Nor does Plaintiff allege what service he missed during "past over month" and how that interfered with his ability to observe the holiday. *See Wilson v. Kelly*, No. 11-CV-30, 2012 WL 3704996, at *10 (N.D.N.Y. Aug. 27, 2012) ("Notably, [the] [p]laintiff does not assert any factual allegations indicating what 'combined religious services' he was not able to attend during the time in question or that he was not provided with an alternative method of practicing his religion."); *cf. Lombardo*, 2018 WL 1627274, at *12 (finding plausible the allegation that missing one Passover Seder was a substantial burden).[6] Therefore, the Complaint

---

[6] Indeed, as written, it is unclear whether the Complaint alleges missing "Jewish meals" and a single "Jewish service," all on April 10, 2017, (*see* Compl. 2–3), or whether these deprivations occurred intermittently, throughout "past over month," (*id.* at 3). However, as

13

fails to plausibly allege that Defendants "put[] substantial pressure on [Plaintiff] to modify his behavior and to violate his beliefs." *Jolly*, 76 F.3d at 477. Accordingly, the Court also grants Defendants' Motion To Dismiss for failure to state a First Amendment claim.[7]

III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The new amended complaint will

---

explained earlier, (*see supra* n.3), to the extent Plaintiff is referencing the Jewish holiday of Passover, it lasted only eight days, not a month. Therefore, because the Complaint is devoid of any details regarding these deprivations or whether Plaintiff had other means to observe "past over," the Court finds that any burden here was merely de minimis. *Jones*, 2018 WL 910594, at *14 ("In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a substantial burden on a plaintiff's free exercise of religion." (internal quotation marks omitted) (collecting cases)); *Leach v. New York City*, No. 12-CV-3809, 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) ("The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a de minimis imposition falling far short of the substantial burden requirement."); *Tafari v. Annets*, No. 06-CV-11360, 2008 WL 2413995, at *17 (S.D.N.Y. June 12, 2008) (holding that denial of Kosher meals on six occasions "constitute a de minimis, not a substantial, interference with [the plaintiff's] free exercise of religion" (italics omitted)), *adopted*, 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008), *aff'd*, 363 F. App'x 80 (2d Cir. 2010).

[7] Because the Court concludes that Defendants did not violate the First Amendment, it need not reach Defendants' alternative argument that Rabbi Horowitz and Father Paul are entitled to qualified immunity because they did not violate clearly established law. (Defs.' Mem. 8.) *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first"). Similarly, the Court need not reach the issue of whether these Defendants have immunity for acting in their clerical capacity. (Defs.' Mem. 8.)

14

replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the specific actions or omissions of each Defendant that violated Plaintiff's constitutional rights. If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 16), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: May 21, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE